EDWARD D. SMITH, L. V. McCOY, STEVE MOORE HAILEY, CALVIN C. BURGETT,

*v.*

DICK L. LANDSDEN, Chairman, CLAUDE L. LAMPLEY, JACOBS H. DOYLE, CURRY BRAMLETT, BILLY PAPPAS, Constituting the Civil Service Commission of the City of Nashville.

370 S. W. 2d 557.

(*Nashville,* December Term, 1962.)

Opinion filed September 11, 1963.

A. B. Neil, Jr., Carl R. Hardin, R. B. Parker, Jr., William R. Willis, Jr., and William C. Wilson, Nashville, for plaintiffs in error.

Ben L. Roskin, Nashville, for defendant in error.

MR. JUSTICE DYER delivered the opinion of the Court.

In this opinion Edward D. Smith, L. V. McCoy, Steve Moore Hailey, Calvin C. Burgett will be referred to as "Appellants," or by name. Dick L. Landsden, Claude L. Lampley, Jacobs H. Doyle, Curry Bramlett, Billy Pappas, constituting the Civil Service Commission of the City of Nashville will be referred to as "Commission."

Appellants were classified employees of the City of Nashville, Tennessee under Civil Service. Charges and specifications were preferred against Appellants by their respective Department Heads and on June 14, 1961 same were heard before the Commission. The Commission found all of Appellants guilty and dismissed them as Civil Service employees of the City of Nashville.

Petitions for certiorari were filed in the Circuit Court of Davidson County under Sections 27-901 et seq., T.C.A. On March 26, 1962 the learned Trial Judge entered an order sustaining the action of the Commission and overruled the petitions for certiorari. Appellants have prayed an appeal to this Court.

Counsel for the Commission has filed in this Court two motions, to wit: (1) that these causes be transferred to the Court of Appeals at Nashville since they involve determination of fact, and (2) that these causes be dismissed since Appellants in the Trial Court failed to make a motion for a new trial.

The Commission in answer to the petition for certiorari first filed a motion to dismiss, which motion contained seven grounds. The Trial Judge in overruling this motion to dismiss did so without prejudice to the

Commission. The Commission then filed a pleading as an answer. This pleading is first an exact copy of the seven grounds set out in the motion to dismiss, then as this pleading states, "further answering" they added two additional grounds. An examination of this pleading shows it is in legal effect a demurrer. Since a final determination was made in the trial court upon a demurder, then appeal would be to this Court. Section 16-408, T.C.A. Also under these circumstances a motion for a new trial would not be necessary. *Landsden v. Tucker*, 204 Tenn. 388, 321 S.W.2d 795. The two motions filed by the Commission are denied.

■ Counsel for Appellant has filed one motion in this Court, to wit: (1) that the cause be remanded to the trial court for the reason that the record in this cause affirmatively shows on its face a material defect, in that the Trial Judge failed to follow the mandatory provisions of Section 27-911, T.C.A., requiring him to reduce his findings of fact and conclusions of law to writing and make them parts of the technical record, and that he failed to follow the requirements of Section 27-113 and 27-114, T.C.A.

The learned Trial Judge in his final order states he has considered the entire record sent up from the Commission, argument of counsel and briefs filed from all he finds the grounds of relief prayed for in the petition for certiorari were not well taken; that in the action of the Commission was not arbitrary, illegal and without jurisdiction; that same was based on material, competent, relevant and reliable evidence; and did not violate any constitutional rights of petitioners. We think under the pleadings as developed in this case this is compliance

with the code sections set out in Appellants motion above noted. This motion is denied.

Appellants first assignment of error is as follows:

"The appointment of the Commissioners under Section 202, Article 47, of the Charter of the City of Nashville, as authorized by Chapter 246 of the Private Acts of 1947 as amended, was illegal, void, and of no legal force or effect, as said Section is violative of Article 2, Section 2, and Article 11, Section 8, of the Constitution of the State of Tennessee in that it unlawfully and unconstitutionally delegates or grants to the President of the Nashville Chamber Of Commerce, President of the Nashville Trades and Labor Council and to the Commander of Post 5, American Legion of Nashville, sovereign power of the State to name said Commissioners and is violative of the Fourteenth Amendment of the Constitution of the United States in that those designated under said act by the State Legislature is arbitrary and deprives Defendants of due process of law and their findings or order in this proceeding against Defendants are void and of no effect."

By Article 47 of Chapter 246, Private Acts of 1947 the General Assembly of the State of Tennessee made provisions for a Civil Service Commission for the City of Nashville. The legislature under this act then appointed the first members of the Commission and upon the expiration of their terms provided in Article 47(3) their successors be appointed as follows:

"Upon each of the positions held by the members becoming vacant by expiration of term or otherwise, an appointing committee composed of the President of

the Nashville Chamber of Commerce, the President of Trades and Labor Council of Nashville, and the Commander of Post 5, American Legion of Nashville, shall make the appointment to fill such vacancy or vacancies. The vote of two members of the appointing committee shall control. If said appointing committee shall fail to make such appointment within sixty (60) days after it is notified of such vacancy or vacancies, the Mayor may fill the vacancy by appointment. A person appointed to fill a vacancy occurring prior to the expiration of such term shall be appointed for the remainder of the term.''

It is admitted the present members of the Civil Service Commission were appointed under the above noted section, that is by the committee composed of the heads of the three named organizations.

This is a challenge of the right of the present members of the Commission to hold such office in that the act under which they were appointed is unconstitutional. In considering the question stated it should be noticed we are not dealing with an office that has no existence. There is no challenge here the office of the Civil Service Commission has not been created by law. Under the admitted facts then the present members of the Commission were not less than officers de facto. In the case of *Evers v. Hollman*, 196 Tenn. 364, 268 S.W.2d 97, this Court quoted the following from *Heard v. Elliott*, 116 Tenn. 150, 92 S.W. 764, in regard to officers de facto:

'' 'An officer de facto is one whose acts, * * * were exercised, * * * under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing

or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public; * * *.''

Also in the case of *Evers v. Hollman,* supra, this Court quoting from *McLean v. State,* 55 Tenn. 22, said:

'' '[I]t is a mistake to assume that to constitute a good officer de facto, he must be appointed or elected by the proper authority. The appointment of Horace Maynard, Judge of the Supreme Court, is in point. This court held that the Governor had no authority to make the appointment in the manner he did. Maynard acted under the Governor's commission, no proceeding was instituted to remove him; and as to third persons, his acts were to be regarded as the acts of an officer de facto.' ''

██ The issue of this case was the guilt or innocence of Appellants in regard to charges and specifications made against them. Appellants attack upon the legality of the appointment of the members of the Commission is in fact a collateral attack upon public officers, exercising their offices at least de facto, if not de jure. The acts of the Commission under such circumstances are valid as to third persons and cannot be controverted in a collateral issue such as this *Evers v. Hollman,* supra. The first assignment of error is overruled.

██ The second assignment of error is made only on behalf of Appellant, Edward D. Smith. This assignment of error alleges the Commission acted illegally, arbitrarily and without jurisdiction by finding from all proof that Smith was guilty of the charges against him. Since there has been a concurrent finding by the Commission and the Trial Judge the limit of our review is to find

material evidence to support the concurrence. *Simm v. Dougherty*, 186 Tenn. 356, 210 S.W.2d 486.

■ In regard to Smith the Commission found as follows:

"Edward D. Smith, Patrolman 2nd Class, was charged with violating Rules 12, 14 and 159 of the Department which in substance prohibit the revealing of any proposed action or movements of the Department to unauthorized persons, prohibit conduct subversive to the good order and discipline of the Department, prohibit revealing confidential information and require the members of the Police Department to be truthful whether under oath or not. He is also charged with neglect of duty. In this connection, when Chief Muller sent for Patrolman Burgett at his home following the report of the two detectives of what had transpired at the market, Lt. Johnson, Lt. Nannie, and Sgt. Kittrell, upon arriving at Patrolman Burgett's home, found that he was talking over the telephone. When Patrolman Burgett arrived at headquarters with these officers, he was asked who he was talking with and he replied that Patrolman Smith had called him to tell him that they were sending after him. Patrolman Smith and Burgett at the hearing both denied this although Patrolman Smith admits making the telephone call to Patrolman Burgett but insists that he was telling Burgett to check his automobile to see whether it had been stolen. Chief Muller, Lt. Johnson, Lt. Nannie and Detectives Ogles and Owen all testified that Patrolman Burgett had stated to them that Patrolman Smith had called him and advised him to get up and put his clothes on, that the Chief was sending for him. The Commis-

sion finds that Patrolman Smith did in fact tip Patrolman Burgett off to the fact that the Chief had sent for him, thereby violating the rules of the Department heretofore mentioned.''

There is material evidence in the record to support such finding. The second assignment of error is overruled.

Judgment affirmed.

### On Rehearing

The original opinion in this matter was filed by the Court on December 14, 1962. Whereupon the Appellants filed a strong and dignified petition to rehear on the ground their attack upon the Commission under their first assignment of error was a direct attack, and not a collateral attack as the Court held. The petition to rehear was granted and the cause argued again before the bar of this Court.

■ It is important to keep in mind the exact objection raised by Appellants under their first assignment of error. They do not contend the Civil Service Commission. is an unconstitutional body, but rather the members were appointed under an unconstitutional grant of legislative power, so even the members would be officers de facto. In *Ridout v. State,* 161 Tenn. 248, 30 S.W.2d 255, 71 A.L.R. 830, the Court noted a de facto officer is one who is in possession of an office and discharging its duties under color of authority; and by color of authority is meant authority derived from an election or appointment however irregular or informal, so that the incumbent be not a mere volunteer. The members of this Commission were in possession of these offices, discharging the duties, under the color of authority of having

been appointed under legislative authority, and not holding as mere volunteers.

The word "collateral" is defined by Webster's New International Dictionary (ed. 1961) as "Accompanying as a side or secondary fact * * * subsidiary, subordinate, indirect; * * * Related to, but not strictly a part of, the main thing or matter under consideration; * * *." The general character of this word remains when used in the context of a "collateral attack" upon a public officer as indicated by Floyd R. Mechem in his book Public Offices and Officers (1890), when he says:

"As a necessary postulate from the same principle of public policy which the rule of the preceding section is deduced is the other rule, equally well settled, that the title of the officer de facto, and the validity of his acts, cannot be collaterally questioned in proceedings to which he is not a party, or which were not instituted to determine their validity." Section 330 at page 220.

Albert Constantineau in his treatise, the De Facto Doctrine (1910), states the general rule and the meaning of "collateral" in this manner:

"Again, the title of a de facto officer cannot be determined in an action or proceeding to which he is a party merely in an official capacity, for the benefit of the public or third persons. Nor is his title triable by means of any process or remedy which, though directly addressed to him, yet involves his right to office in a collateral way, that is, merely because it is necessary to show want to title, in order to lay a foundation for the relief sought. Of such processes or remedies and

prohibition, mandamus, injunction, and the like. * * * ''
Chapter 32, Section 429, at pages 591-592.

From the above quotations can be gleaned several guidelines for determining whether a particular attack upon the title of a public official is ''collateral.'' By the very definition of the word if the attack is secondary, subsidiary, subordinate, i. e., related to the main matter under consideration but not strictly a part thereof, the attack is indirect and collateral. If the official's title is questioned in a proceeding to which he is not a party or which was not instituted specifically to determine the validity of his title the attack is collateral. If he title of the officer is questioned in a proceeding in which he is a party merely because he is acting in his official capacity the attack is collateral. Lastly if the attack is made because it is necessary to show the officer's want of title to lay a basis for some other relief the attack is collateral. Each of these guidelines seems to indicate that the attack in the principal case is collateral. The main consideration in the case at bar is the guilt or innocence of the Appellants; the Commission's legal status is related, but has no direct bearing upon the main question. Neither was the present action instituted for the specific purpose of determining the Commission's legal status. The members of the Commission were parties to this action only in the sense that they were acting in their respective official capacities. Fnally the relief sought is reversal of the Commission's decision and restoration of the Appellants, and not the removal of the members of the Commission.

Other Tennessee cases not cited in the original opinion at point on the issue here presented are, *Blackburn v.*

*State,* 40 Tenn. 690; *Calloway v. Sturm,* 48 Tenn. 764; *Ridout v. State,* supra.

The cases cited by Appellants in their brief concern collateral attacks upon judgments. The case at bar does not present the question of collaterally attacking a judgment. The question here is in regard to a collateral attack upon the Commission. The Appellants are attacking the judgment here directly on appeal, but they are attacking the Commission collaterally.

We are fully satisfied with our original opinion in this case and it is as to all matters affirmed.